# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5208 | **DATE** | 4/16/2004 |
| **CASE TITLE** | Foster Palmer vs. Anthony J. Principi et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant Veterans Affairs' Motion for Summary Judgment [#23] is hereby **granted**. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 4-19-04 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 31 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 4/16/2004 date mailed notice | |
| | FT/ courtroom deputy's initials | | FT mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOSTER PALMER, | ) |
|       Plaintiffs, | ) |
| | ) Case No. 02 C 5208 |
|     v. | ) |
| ANTHONY J. PRINCIPI, Secretary of Veterans Affairs, Department of Veterans Affairs, Defender, | ) Magistrate Judge ) Arlander Keys |
|       Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiff, Foster Palmer, brought this Title VII action against Defendant, Anthony J. Principi, Secretary of Veterans Affairs (the VA). The VA now moves for summary judgment. For the reasons below, the court grants the VA's motion.

FACTS

This lawsuit arises out of the circumstances surrounding Foster Palmer's retirement from the VA after thirty years of service. During his tenure, Mr. Palmer held various positions and titles. In 1994, Mr. Palmer became chief of the Business Services Office of the VA's National Acquisition Center (NAC). As chief, Mr. Palmer was responsible for marketing VA contracts to other government agencies. Mr. Palmer also had the authority to bind the VA to contracts for goods and services.

1

Shortly before Mr. Palmer became chief, a VA employee brought sexual harassment charges against him. Upset by the VA's subsequent investigations, Mr. Palmer filed a series of Equal Employment Opportunity (EEO) complaints against the VA, claiming that the VA was using the sexual harassment investigations to force him into an early retirement.

In March 1996, Mr. Palmer and the VA agreed to mediate his EEO complaints. With the assistance of counsel, the parties reached a settlement agreement whereby Mr. Palmer agreed to retire by June 1, 1996 or no later than November 1, 1996 if Mr. Palmer secured temporary assignment outside the NAC (the Settlement Agreement). The Settlement Agreement also provided that, upon reasonable documentary proof of damages and expenses, the VA would pay Mr. Palmer a lump sum payment of $75,000 by January 31, 1997. After executing the Settlement Agreement, the VA placed Mr. Palmer on paid leave until June 1, 1996. Mr. Palmer then decided to procure temporary assignments outside the NAC, rather than elect the June 1 retirement date.

Soon after signing the Settlement Agreement, Mr. Palmer began demanding that the VA pay him the agreed upon $75,000. Various issues arose over the adequacy of Mr. Palmer's medical documentation. The VA claims that, despite the parties' disagreements, it hoped to meet the January 31, 1997 deadline. But Mr. Palmer was not satisfied. So, on November 4, 1996, he

returned to the VA and announced that he wished to continue working.

To accommodate Mr. Palmer's unexpected return, the VA created a temporary position - that of liaison between the NAC and the VA's Washington D.C. business services office.[1] Although the job paid the same salary as his previous post, Mr. Palmer was not pleased with his new position. He complains that the VA put him in a separate building, apart from his former NAC colleagues. Mr. Palmer also complains that, in contrast to his former post, he did not have a dedicated parking space, his name was not listed in the agency phone directory, and he did not have a properly functioning computer or adequate office supplies. Mr. Palmer further claims that his supervisor did not invite him to regular staff meetings, and that VA employees generally ignored him. Mr. Palmer says that these circumstances caused him to feel ostracized, degraded, and humiliated.

Meanwhile, the parties continued negotiating payment of the settlement monies. After considerable discussion, the parties executed an addendum to the Settlement Agreement wherein the VA agreed to make payment on a date certain and Mr. Palmer agreed to retire. Despite this resolution, Mr. Palmer filed another EEO complaint, alleging that the VA's decision to place him in the

---

[1]The VA did not restore Mr. Palmer to his prior position because the department had been relocated to Washington, D.C.

temporary position was retaliatory. Without deciding the matter, the EEOC remanded Mr. Palmer's complaint to the VA for a final agency decision. On April 22, 2002, the VA denied Mr. Palmer's retaliation claim, finding that Mr. Palmer did not suffer an adverse employment action. Mr. Palmer subsequently filed charges with the EEOC, which issued a right to sue. Mr. Palmer then initiated the instant lawsuit, and subsequently consented to proceed before this Court.

Mr. Palmer's complaint alleges that the VA retaliated against him after he engaged in statutorily protected activity. Following written discovery, the VA now moves for summary judgment. The VA argues that Mr. Palmer has not produced evidence to sustain his retaliation claim and that summary judgment is, therefore, appropriate.

## STANDARD OF REVIEW

The court will grant summary judgment only if the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)(2003). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the facts in the light most favorable to the nonmoving party and

draws all reasonable inferences in the nonmoving party's favor. *Shank v. William R. Hauge, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party in a motion for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party's burden is met, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to survive summary judgment. *Schacht v. Wisconsin Dep't of Corrs.*, 175 F.3d 497, 504 (7th Cir. 1999). In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

## DISCUSSION

Unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (2003); 42 U.S.C. § 2000e-3. To overcome summary judgment, the plaintiff may establish a prima facie case of retaliation using either the direct method or the direct method of proving discrimination. *Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an *adverse employment*

*action* taken by the employer; and (3) a causal connection between the two. *Id.* (emphasis added). Under the indirect method, the plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an *adverse action from the employer;* and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* (emphasis added). Required under both analyses is that the plaintiff suffered an adverse employment action. The court finds that Mr. Palmer did not suffer an adverse employment action, entitling the VA to summary judgment on his retaliation claim under either the direct or indirect method.

Mr. Palmer alleges that the VA's decision to place him in a temporary position, which lacked some of the responsibilities and amenities of his previous post, constituted a materially adverse employment action. Specifically, Mr. Palmer alleges that the temporary position was located in an isolated building, away from his former colleagues. Mr. Palmer also complains that the VA did not provide him with a dedicated parking space, an adequately functioning computer, or sufficient office supplies. Mr. Palmer further complains that he was not invited to staff meetings and his name was not listed in the staff directory. Lastly, Mr. Palmer alleges that the temporary position significantly diminished his

6

prior authority. Mr. Palmer claims that these changed conditions caused him to feel isolated, ostracized, and humiliated. Mr. Palmer, therefore, concludes that he suffered a materially adverse employment action. The court disagrees.

Many of Mr. Palmer's complaints constitute mere inconveniences, not adverse employment actions. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002) (material adverse employment action is something more than a mere inconvenience). Some plainly trivial examples include Mr. Palmer's dissatisfaction with his parking space, office supplies, and malfunctioning computer. None of these complaints significantly altered the terms and conditions of Mr. Palmer's job and are, therefore, not actionable. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (adverse employment action is one that significantly alters the terms and conditions of the employee's job).

Mr. Palmer's more substantive complaints also do not amount to adverse employment actions. These complaints include Mr. Palmer's allegations about his office location, absence of his name from the phone directory, and lack of invitations to staff meetings. While it is true that Mr. Palmer's new office was located in a separate building, the building was a mere sixty yards away from his former office. Regarding the absence of his name from the agency phone directory, it is not uncommon, nor is

7

it unreasonable, for employees to experience delays before large bureaucracies accommodate their administrative needs. More importantly, Mr. Palmer was not a brand-new employee. He had worked at the VA for over thirty years. If he wanted his name added to the phone directory, he likely knew whom to contact. The same goes for Mr. Palmer's complaints regarding the staff meetings. Mr. Palmer admits that he did not ask to be included in staff meetings. Mr. Palmer's absence from the meetings, like his absence from the phone directory, seems to be the result of his own inaction, and not the result of an adverse employment action.

Furthermore, Mr. Palmer's feelings of isolation, ostracism, and humiliation does not necessarily evidence adverse employment actions. Not everything that makes an employee unhappy is an actionable adverse action. *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000). Nor can Mr. Palmer establish that his colleagues' alleged indifference to his deteriorating mental condition amounted to an adverse employment action. General hostility does not qualify as actionable adverse employment actions. *Hilt-Dyson*, 282 F.3d at 466. And Mr. Palmer has certainly not demonstrated that any alleged hostility was so serve and pervasive as to be actionable. *Id.* at 466 (general hostility and comments do not qualify as adverse employment actions unless the hostility was severe and pervasive).

Lastly, Mr. Palmer's remaining complaint regarding his

diminished responsibilities similarly fails to evidence an adverse employment action. Mr. Palmer alleges that his former position allowed him to bind the VA to contracts, whereas the new position did not. While it is true that materially adverse actions may include a demotion evidenced by significantly diminished material responsibilities, *Hilt Dyson,* 282 F.3d at 465-66, it is also true that a lateral transfer involving no reduction in pay and no more than a minor change in job conditions cannot rise to the level of a materially adverse employment action. *Williams v. Bristol Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996). Mr. Palmer's new position paid the exact same salary as his former position. While the position might have lacked some of the authorities that accompanied his former post, the new position also carried its own particular set of responsibilities and authorities. It appears that Mr. Palmer's dissatisfaction with the authorities granted by his new position, merely represents his subjective preference for one position over another. Such preferences cannot constitute evidence of adverse employment actions. *Herrnreiter v. Chicago Housing Authority,* 315 F.3d 742, 745 (7th Cir. 2003). Therefore, because none of Mr. Palmer's complaints rise to the level of adverse employment actions, his retaliation claim cannot stand.

But before concluding, the court should address a related issue. In addition to complaining about the conditions of his new position, Mr. Palmer has spent considerable effort arguing that

9

the VA intentionally delayed paying him his settlement monies. It is unclear whether Mr. Palmer seeks to characterize the VA's alleged delay as an additional adverse employment action. If he does, the characterization is without merit. The vast majority of incidents referenced that relate to the VA's alleged delay, regard negotiations and discussions that occurred prior to the Settlement Agreement's payment deadline. Mr. Palmer was apparently anxious to get his money, as he began demanding payment immediately after signing the Settlement Agreement. But the VA was certainly under no obligation to honor Mr. Palmer's immediate demands, and it strains the imagination to understand how the VA's refusal to honor Mr. Palmer's premature requests constituted an adverse employment action. Accordingly, this alternate position is untenable. Thus, because Mr. Palmer cannot demonstrate an adverse employment action, his retaliation claim must fail.

For the sake of completeness, the court will briefly address some of the other problems with Mr. Palmer's case. As stated above, under the direct method of proving retaliation, a plaintiff must demonstrate a causal connection between the adverse employment action and the protected activity. *Stone,* 281 F.3d at 644. Mr. Palmer cannot make this showing. Assuming, *arguendo*, that Mr. Palmer's changed employment conditions constituted an adverse employment action, Mr. Palmer cannot demonstrate that his protected activity precipitated the new position. Rather, the new

position was created to accommodate Mr. Palmer's unannounced and unexpected arrival at the VA's door after he had agreed to retire. To ascribe retaliatory motives to the VA's accommodation is illogical. Moreover, if Mr. Palmer was not restored to his previous position, it was not because the VA sought to retaliate against him, rather it was because Mr. Palmer's former post had been relocated to Washington D.C. Thus, because Mr. Palmer cannot demonstrate the requisite causal connection between his protected activity and the alleged adverse employment action, his retaliation claim fails for another reason.

This same flaw surfaces if Mr. Palmer's case is considered under the indirect method of proving retaliation. Assuming, *arguendo*, that Mr. Palmer could establish a prima facie case of retaliation using the indirect method[2], Mr. Palmer has offered no evidence to rebut the VA's noninvidious reasons for the adverse employment action. *Stone*, 281 F.3d at 644 (the employer is entitled to summary judgment despite the employee's prima facie case if the employer presents unrebutted evidence of a noninvidious reason for the adverse action). The VA gave Mr. Palmer the new position to accommodate his unexpected return. And the VA could not restore Mr. Palmer to his prior position because

---

[2]This is a particularly generous assumption, considering Mr. Palmer's inability to articulate an adverse employment action, coupled with the fact that Mr. Palmer has no evidence that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

the position had been relocated to Washington, D.C. Because the VA's reasons are legitimate, nondiscriminatory, and unrebutted, Mr. Palmer's retaliation claim fails for yet another reason.

CONCLUSION

IT IS HEREBY ORDERED THAT, for the reasons set forth above, Defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED.

DATED: April 16, 2004        ENTER:

*Arlander Keys*

ARLANDER KEYS
United States Magistrate Judge